ASBURY AUTOMOTIVE GROUP, INC., Asbury Automotive Arkansas, L.L.C., North Point Auto Group, North Point Ford, Inc., NP Flm, L.L.C., Prestige Toy, L.L.C., Prestige Bay, L.L.C., Premier Nsn, L.L.C., NP Vkw, L.L.C., Premier Pon, L.L.C., and NP Mzd, L.L.C. *v.* Charles and Carol PALASACK; and Otis Campbell

06-215                                                    237 S.W.3d 462

Supreme Court of Arkansas
Opinion delivered June 22, 2006

---

*Watts, Donovan & Tilley, P.A.*, by: *David M. Donovan* and *Staci Dumas Carson*, for appellants.

*Nichols & Campbell, P.A.*, by: *H. Gregory Campbell*; *Roberts Law Firm, P.A.*, by: *Michael L. Roberts* and *Richard Quintus*; and *Varnell & Warwick, P.A.*, by: *Brian W. Warwick*, for appellees.

ROBERT L. BROWN, Justice. Appellants, the Asbury Automotive Group, Inc., and others (hereinafter referred to collectively as Asbury Automotive), appeal from the circuit court's certification of the appellees' class-action lawsuit. On December 1, 1999, Charles and Carol Palasack purchased a Ford F-150 truck from appellant North Point Ford, Inc. On December 31, 2002, the Palasacks filed a class-action lawsuit to contest a $99.85 documentary fee charged by North Point Ford. The Palasacks asserted in their complaint that the charge of that documentary fee was a violation of the Arkansas Deceptive Trade Practices Act. First, they asserted that the Deceptive Trade Practices Act was violated because the defendants "fraudulently and deceptively attempted to mislead the buyers or lessees . . . into believing that the document preparation fee was a valid charge tied to the actual preparation of the legal documents." They further alleged that the fee charged for preparing legal documents by non-lawyers "constitutes the illegal practice of law in Arkansas." The Palasacks claimed that the "[d]efendants should not be permitted to unjustly enrich themselves at the expense of the Plaintiffs and the Class, but should be required to make restitution for all funds illegally received and retained."

It subsequently was determined that the charge to the Palasacks was not a documentary fee but was a charge for a service package. Because the Palasacks no longer qualified as members of the class, the appellees' complaint was amended on July 22, 2003, to name appellee Otis Campbell as the new class representative.[1] Campbell had purchased a 2000 Ford Focus from North Point Ford on March 5, 2001, at which time he paid a $98 documentary fee. After two hearings in the spring of 2005, the circuit court entered an order on November 14, 2005, in which it granted the appellees' motion for class certification.

In its order, the circuit court found that since November 2000, the appellants had sold 10,000 or more vehicles, in which the documentary fee had been charged. Because the court con-

---

[1] Apparently, the Palasacks are no longer class members, but there has not yet been a motion filed to remove them from the style of this case.

cluded that thousands of customers had potential claims regarding the documentary fee, it found that the numerosity requirement for class certification was satisfied, and the appellants did not contest that point. The circuit court further found that the typicality, adequacy, predominance, and superiority criteria of Arkansas Rule of Civil Procedure 23 (2006) had been satisfied.

The circuit court defined the class as follows:

> All persons that paid Defendants in Arkansas a documentary fee or administrative fee since December 31, 1997. Excluded from this class are: (1) present and former employees, officers, and directors of Defendants, and (2) any class member who timely elects to be excluded from the class pending further orders of the Court.

Asbury Automotive now appeals from the circuit court's order certifying the class.

The certification of a class action is governed by Arkansas Rule of Civil Procedure 23. *See* Ark. R. Civ. P. 23 (2006). This court has held that "[t]he determination that the class–certification criteria have been satisfied is a matter within the broad discretion of the trial court, and this court will not reverse the trial court's decision absent an abuse of that discretion." *Lenders Title Co. v. Chandler*, 358 Ark. 66, 71-72, 186 S.W.3d 695, 698 (2004). When reviewing a class-certification order, we focus on the evidence contained in the record to determine whether it supports the circuit court's conclusion regarding certification. *See id.* We have also said that "[we] will not delve into the merits of the underlying claims when deciding whether the Rule 23 requirements have been met." *Id.* at 72, 186 S.W.3d at 698.

There are six criteria that must be met before a suit may be certified as a class action under Rule 23: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; and (6) superiority. *See* Ark. R. Civ. P. 23 (2006). In this case, Asbury Automotive contests the circuit court's findings regarding adequacy, typicality, predominance, and superiority. Alternatively, Asbury Automotive asserts that the circuit court erred in defining the class.

### I. Adequacy

Asbury Automotive first contends that Otis Campbell is not an adequate class representative. The requirement of adequacy under Rule 23 specifically states that the "representative parties

will fairly and adequately protect the interests of the class." Ark. R. Civ. P. 23(a)(4) (2006).[2] This court has previously interpreted Rule 23(a)(4) as requiring the following three elements:

> (1) the representative counsel must be qualified, experienced and generally able to conduct the litigation; (2) that there be no evidence of collusion or conflicting interest between the representative and the class; and (3) the representative must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation.

*Amer. Abstract & Title Co. v. Rice,* 358 Ark. 1, 12, 186 S.W.3d 705, 712 (2004); *see also Mega Life & Health Ins. Co. v. Jacola,* 330 Ark. 261, 954 S.W.2d 898 (1997).

Asbury Automotive challenges whether Campbell is an adequate representative for two reasons. First, it asserts that Campbell does not qualify because he was solicited by class counsel to be a class representative after the lawsuit was filed. According to Asbury Automotive, until Campbell received a solicitation letter from the class's counsel, he was not aware of any potential claim he might have relating to the documentary fee, he had no interest in pursuing a claim regarding the documentary fee, and he had no concerns or complaints regarding his vehicle purchase from the appellants. Asbury Automotive adds that this solicitation violates Rule 7.3 of the Arkansas Rules of Professional Conduct as well as the rules governing class actions.[3]

The second reason Campbell does not qualify, according to Asbury Automotive, is that he lacks familiarity with the facts of the case and that he refused to answer certain questions at his deposition and was evasive. It contends that Campbell barely could recall

---

[2] On May 25, 2006, this court adopted an amendment to Rule 23(a)(4), so that the rule now reads "the representative parties and their counsel will fairly and adequately protect the interests of the class." Ark. R. Civ. P. 23(a)(4) (2006).

[3] Rule 7.3 of the Arkansas Rules of Professional Conduct states as follows:

> (a) A lawyer shall not solicit, by any form of direct contact, in-person or otherwise, professional employment from a prospective client with whom the lawyer has no family or prior professional relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain.

Arkansas Rules of Professional Conduct 7.3(a) (2006).

the details of the transaction that gave rise to his being named as a plaintiff in this class-action suit. In addition, it maintains that Campbell's late entrance into the case is not indicative of an informed representative. It adds that whatever Campbell's understanding of the case may be, it is clear from his deposition testimony that he had no disagreement with the purchase of his vehicle until well after the suit was filed and shortly after the class counsel discovered their need for him.

In *Direct General Insurance Co. v. Lane*, 328 Ark. 476, 944 S.W.2d 528 (1997), this court said that the " 'adequacy of representation' element is satisfied if the representative displays a *minimal* level of interest in the action, familiarity with the challenged practices, and ability to assist in litigation decisions." 328 Ark. at 485, 944 S.W.2d at 532 (emphasis added); *see also Amer. Abstract and Title Co., supra; Mega Life, supra; Union Nat'l Bank v. Barnhart*, 308 Ark. 190, 823 S.W.2d 878 (1992). In *Lane*, the class representative testified at the certification hearing that she understood the responsibility she was undertaking by agreeing to represent the class. She additionally said that she had discussed the matter with her mother, that she had visited with her attorney several times to discuss the case, and that she had reviewed the relevant documents. She testified that she decided to become a class representative out of her desire to prevent Direct General Insurance from continuing to charge excessive interest and fees and that she hoped to recover any amount found to be an overcharge. Additionally, we noted that the class counsel in that case had extensive experience in conducting class-action litigation.

In *Barnhart, supra*, the appellants advanced an argument similar to that of Asbury Automotive. Like Campbell, Ms. Barnhart became the class representative after other former class representatives withdrew from the case. The appellants in *Barnhart* argued that "the action [was] propelled not by Ms. Barnhart, but by 'a loose band of lawyers who want to be in court . . . . ' " *Barnhart*, 308 Ark. at 194, 823 S.W.2d at 880. They cited two violations of the Arkansas Rules of Professional Conduct, including Model Rule 7.3, and further maintained that several factors indicated that Ms. Barnhart was "a mere 'pawn in an action being maintained by counsel.' " *Id.* at 194-95, 823 S.W.2d at 880.

This court first noted in *Barnhart* that it was not convinced that the appellants' evidence supported their assertion that Ms. Barnhart was actively recruited as part of her attorneys' attempts to litigate for their own interests. We further held that "absent more

egregious conduct on the part of the class attorneys, we do not believe the rights of the plaintiffs should be prejudiced by denying them class status." *Id.* at 195, 823 S.W.2d at 880. This court also added that "[w]hen it otherwise appears that the representative plaintiff will 'fairly and adequately protect the interests of the class,' allegations of attorney misconduct are more appropriately addressed to the state disciplinary committee." *Id.* We found that Ms. Barnhart's testimony established her interest in joining the lawsuit before she was proposed as its class representative and that she voluntarily agreed to accept that role. *See id.* Thus, we held that the circuit court had not abused its discretion in finding that Ms. Barnhart's representation did not violate Rule 23's notion of fairness and adequacy.

Both *Lane, supra,* and *Barnhart, supra,* offer guidance for the instant case. As class counsel points out, Campbell, in his affidavit, stated that he was "familiar with the allegations in this case" and that he "underst[ood] the responsibilities of being a class representative." He also declared that he was "willing to serve as class representative if necessary." In addition, Campbell voluntarily submitted to a deposition by Asbury Automotive in which he explained his involvement in the case. While he did note that he had learned about the lawsuit after he received some literature in the mail that referenced a class action, he explained that he started asking questions and engaging in his own research that led him to believe that the charge of the documentary fee by North Point Ford was illegal. He said in his deposition:

> I asked people that I knew and that I had confidence in. . . . I had a friend that said he knew of a case of that particular, that it wasn't right, et cetera. I don't remember all the people. Before I said yes to the Roberts Law Firm, I tried to throw it out to some people in a group that knew something about it, I thought knew something about it, and they was relating to me that they had friends — just general conversation with people.

Hence, it is clear that Campbell conducted his own research as to the legitimacy of the allegations before he decided to become a class member and the class representative. He further stated in his deposition that even though he may not recover a large amount of money through his involvement, he did not mind becoming a part of it if it was going to help someone else keep from paying what he believes is an illegal documentary fee.

■ Further, with respect to the issue of solicitation of Campbell as class representative, we conclude that our *Barnhart* decision specifically decides this matter. Campbell's statements exhibit, as was the case with Ms. Barnhart, that he will fairly and adequately protect the interests of the class. Moreover, we reiterate what we said in *Barnhart* that any allegations of attorney misconduct are more appropriately addressed to the state disciplinary committee. We note in this regard that Asbury Automotive did not argue Arkansas Rule of Professional Conduct 7.3 to the circuit court. Accordingly, we will not address that specific rule in this appeal.

Asbury Automotive also urges that Campbell is an inadequate representative based on this court's decision in *Tay-Tay, Inc. v. Young*, 349 Ark. 675, 80 S.W.3d 365 (2002). It claims in its brief to this court that "[c]ourts have found proposed representatives inadequate in several cases because the plaintiff lacked familiarity with the suit or acted evasively when questioned about their participation in the case." To support this proposition, the appellants cite to a string of cases from multiple jurisdictions, including *Tay-Tay, supra*.

In *Tay-Tay*, this court observed that in addition to the third requirement as set out in *American Abstract & Title Co., supra*, it considers when determining adequacy, a circuit court may also consider it necessary "to resolve any questions of reluctancy on the part of named class representatives to comply with requirements of disclosure or participation in discovery requests during the pendency of the litigation." 349 Ark. at 685, 80 S.W.3d at 369-70. In *Tay-Tay*, however, the circuit court's determination that the named representatives were adequate was upheld by this court. Thus, *Tay-Tay* is not a case where a named representative was found to be inadequate due to evasiveness in answers to defense counsel.

In the instant case, Campbell would not give the name of one attorney friend at his deposition with whom he had spoken about the case. When Asbury Automotive's counsel requested the name of that attorney, Campbell said that he would invoke the Fifth Amendment and refused to tell appellant's counsel his friend's name. We do not believe that Campbell's refusal to divulge his friend's name transformed him into an inadequate representative.

In sum, we conclude that the record reflects that Campbell displayed the *minimal* level of interest in this class action, that he is familiar with the challenged practice of charging a documentary fee as part of a car sale, and that he is able to assist in litigation decisions with class counsel. We affirm on the adequacy point.

## II. Typicality

Asbury Automotive next asserts that the circuit court erred in certifying the class because the claims of its representative, Campbell, are not typical of the claims of its members. This court has described the typicality requirement as follows: "[T]he typicality requirement is satisfied where the event or practice or course of conduct that gives rise to the claim of other class members is the same event or practice or course of conduct that gives rise to the plaintiff's injury, and where the claim is based upon the same legal theory." *Van Buren Sch. Dist. v. Jones*, 365 Ark. 610, 619, 232 S.W.3d 444, 452 (2006) (quoting *F & G Fin. Servs., Inc. v. Barnes*, 349 Ark. 420, 427, 82 S.W.3d 162, 166 (2002)); *see also Mega Life, supra*. We also said that "[t]he class representative's claim must only be typical and not identical." *Van Buren Sch. Dist.*, 365 Ark. at 619, 232 S.W.3d at 452 (citing *F & G Servs., Inc., supra*).

For its support, Asbury Automotive compares the instant case to an Illinois case, *Jeannides v. U.S. Home*, 114 F.R.D. 29 (N.D. Ill. 1987). In *Jeannides*, the plaintiffs sued a construction contractor for improperly constructing several homes. The Illinois district court held that the purchase alone did not satisfy the typicality requirement because there would be significant problems proving that every injury arose out of the same course of conduct. That was because every home was built individually and varied by age, price, size, and design. Asbury Automotive asserts in the instant case that as in *Jeannides* the experiences that each customer had in purchasing an automobile and paying a document fee will also be different.

*Jeannides* is inapposite for two reasons. First, as Illinois authority, it is not binding on this court. Secondly, it is clearly distinguishable on its facts. In *Jeannides*, the court noted that the plaintiffs had failed to plead that their claims actually arose from the same events that gave rise to the claims of the other class members. The Illinois court also noted that the claims of all the plaintiffs did not arise from the same conduct. In this case, however, the claims

of the class members all arise out of the same conduct: the charge of a documentary fee by the car dealers. The Asbury Automotive representatives testified that both the documents used and the documentary fees charged are essentially the same in every transaction. Campbell testified that he was charged a documentary fee when he purchased an automobile from the appellants. As a result, his claim and the other class members' claims are based on the same conduct. Similarly, the legal claims of all the class plaintiffs, including Campbell, are also the same — that the charge of the documentary fee was illegal. We affirm the circuit court on the typicality issue.

### III. Predominance

Asbury Automotive next claims that the circuit court erred in certifying the class because the issues common to all class members do not predominate over the individual issues. On predominance, this court has said:

> The predominance element can be satisfied if the preliminary, common issues may be resolved before any individual issues. In making this determination, we do not merely compare the number of individual versus common claims. Instead, we must decide if the issues common to all plaintiffs "predominate over" the individual issues, which can be resolved during the decertified stage of bifurcated proceedings.

*Van Buren Sch. Dist.*, 365 Ark. at 620, 232 S.W.3d at 452 (quoting *Fraley v. Williams Ford Tractor and Equip. Co.*, 339 Ark. 322, 344-45, 5 S.W.3d 423, 437 (1999)); *see also Mega Life, supra.*

In the case at hand, the circuit court found:

> The common claim is the Defendants' charging of a documentary fee constitutes the unauthorized practice of law. Plaintiffs claim that the charging of this fee constitutes the unauthorized practice of law and is therefore a deceptive trade practice and unjustly enriches the Defendants, despite the passage of Ark. Code Ann. § 23-112-315 and -612. The common questions concerning the charging of that fee, and the Defendants' basis for charging it, predominate over any individual considerations for each of the individual claims. The predominance criteria has been satisfied.

Asbury Automotive maintains that any determination of whether it violated the Arkansas Deceptive Trade Practices Act will require individualized inquiries. That is because one element

of the Deceptive Trade Practices Act will involve the question of whether each individual class member relied on a car dealer's alleged deceptive conduct. Asbury Automotive further maintains that there are other individualized inquiries that must be made, such as how much each plaintiff paid for his or her purchase.

We agree with Campbell that these are common issues of law and fact that predominate over the individual issues in this case. The circuit court found that the predominating questions concern the charge of the documentary fee and the basis for charging that fee. These overarching issues can be resolved before the circuit court reaches any individual issues, such as the degree of reliance of each class member on the misrepresentation. *See BNL Equity Corp. v. Pearson*, 340 Ark. 351, 10 S.W.3d 838 (2000); *see also Mega Life, supra; Seeco, Inc. v. Hales*, 330 Ark. 402, 954 S.W.2d 234 (1997). The circuit court did not abuse its discretion in concluding that the predominance element was satisfied.

*IV. Superiority*

Asbury Automotive also urges that the circuit court erred in certifying the class because a class action is not the superior method of adjudicating this case when the issues common to all class members do not predominate over the individual issues.

Regarding the element of superiority, we have said:

> Rule 23(b) requires that a class action be superior to other available methods for the fair and efficient adjudication of the controversy. This court has held that the superiority requirement is satisfied if class certification is the more "efficient" way of handling the case, and it is fair to both sides. Where a cohesive and manageable class exists, we have held that real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. This court has further stated that when a trial court is determining whether class-action status is the superior method for adjudication of a matter, it may be necessary for the trial court to evaluate the manageability of the class.

*Van Buren Sch. Dist.*, 365 Ark. at 621, 232 S.W.3d at 453 (quoting *Arkansas Blue Cross & Blue Shield v. Hicks*, 349 Ark. 269, 288, 78 S.W.3d 58, 69-70 (2002) (internal citations omitted)); *see also BNL Equity Corp., supra; Mega Life, supra; Seeco, Inc., supra.*

■    In the case before us, the circuit court noted that the number of claims and the low dollar amount involved in each claim led to its conclusion that a class action is superior because it would avoid a multitude of small individual claims. The initial determination of common, predominating issues in the form of a class-action lawsuit is the most efficient method of adjudicating these claims. Once these questions are answered, then any individual claims and advanced defenses may be tried separately, if necessary. The circuit court did not abuse its discretion in finding that the superiority requirement was satisfied.

## V. Class Definition

Asbury Automotive contends, as its final point, that the circuit court erred in defining the class. The circuit court defined the class as follows:

> All persons that paid Defendants in Arkansas a documentary fee or administrative fee since December 31, 1997. Excluded from this class are: (1) present and former employees, officers, and directors of Defendants, and (2) any class member who timely elects to be excluded from the class pending further orders of the Court.

Asbury Automotive contends that the class parameters extend too far. It explains that it did not begin charging the fee until November 2000 and that the Arkansas General Assembly specifically authorized the fee in August 2001 by legislation. *See* Act No. 1600 of 2001, now codified at Ark. Code Ann. §§ 23-112-315 (Supp. 2001 & Repl. 2004) (new vehicles) and 23-112-612 (Repl. 2004) (used vehicles). Thus, there can be no legal violation in light of this legislation, according to Asbury Automotive. It further maintains that the car dealership did not even exist until February of 1999. Thus, it urges that any class should be limited to the time period from November 2000 through August 2001, the date of the legislation. It concludes by advocating that the class should not be defined to extend indefinitely into the future. Rather, it asserts that a reasonable ending date, such as the date of the class-certification order, must be imposed. Otherwise, it claims that its potential exposure is unlimited.

On the issue of class definition, this court has recently said:

> It is axiomatic that in order for a class action to be certified, a class must exist. The definition of the class to be certified must first meet

a standard that is not explicit in the text of Rule 23, that the class be susceptible to precise definition. This is to ensure that the class is neither "amorphous," nor "imprecise." Concurrently, the class representatives must be members of that class. Thus, before a class can be certified under Rule 23, the class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. Furthermore, for a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria.

*Van Buren Sch. Dist.*, 365 Ark. at 613-14, 232 S.W.3d at 448 (quoting *Arkansas Blue Cross & Blue Shield*, 349 Ark. at 280-81, 78 S.W.3d at 64-65); *see also Farmers Ins. Co. v. Snowden*, 366 Ark. 138, 233 S.W.3d 664 (2006).

We initially observe that neither party cites this court to any law on the time boundaries for a potential class definition. This court has held that the identity of class members must be ascertainable by reference to objective criteria so that the circuit court is able to determine whether a person is a member of the class. *See, e.g., Van Buren Sch. Dist., supra; see also Arkansas Blue Cross & Blue Shield, supra.* This court has also upheld a class definition that defined the class as all certified teachers who performed particular duties while working for a certain school district from "August 1998 *to the present." Van Buren Sch. Dist.*, 365 Ark. at 615, 232 S.W.3d at 449 (emphasis added). Additionally, this court has upheld class definitions that define the class period from a particular date to the date that notice was provided to the class. *See Arkansas Blue Cross & Blue Shield, supra.* We have also held that the exact size of the proposed class and the identity of class members need not be established to certify a class. *See Lenders Title Co. v. Chandler, supra.*

Courts in other jurisdictions have held that "[t]he class need not be so ascertainable from the definition that every potential member can be identified at the commencement of the action." *In re Tetracycline Cases*, 107 F.R.D. 719, 728 (D. Mo. 1985); *see also Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970) (holding that "[i]t is not necessary that the members of the class be so clearly identified that any member can be presently ascertained."); *see also* AM. JUR. 2d *Federal Courts* § 1832 (2005) (stating that "each member of the class need not be ascertainable at the time of the bringing of the class action.").

One federal court has explained that it is "the contours of the purported class" that "must be clearly ascertainable even at the outset of the litigation or, as cases recognize, the court will be unable to determine whether the other requirements of Rule 23(a) are satisfied." *Ridgeway v. Int'l Bhd. of Elec. Workers, Local No. 134*, 74 F.R.D. 597, 602 (D. Ill. 1977). The court in *Ridgeway* explained that "this does not mean, however, that each potential member must be identifiable before the trial on the merits." *Id*. Rather, that court noted that "[i]t merely means that the group designated in the pleadings as sharing with the plaintiff certain relevant characteristics must be circumscribed by some objective set of criteria." *Id*.

■ In the instant case, the circuit court's definition clearly defines the class based on objective criteria. That definition provides that the identification of class members can be accomplished by determining the persons in Arkansas that have paid a documentary fee to the appellants since December 31, 1997. This definition is sufficient because it provides an objective set of criteria that can be used to identify the class members. The impact of Act 1600 of 2001 has yet to be determined by the circuit court. We also agree with class counsel that it would fly in the face of judicial economy to close the class prematurely at this juncture. We hold that the class definition is sufficient.

Affirmed.

GLAZE, J., not participating.